UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

STEVE WAYNE POSTIER,                    CIVIL NO. 10-4963 (PJS/TNL)

            Plaintiff,

v.                                      **REPORT & RECOMMENDATION
                                        ON CROSS MOTIONS
MICHAEL ASTRUE, Commissioner of         FOR SUMMARY JUDGMENT**
Social Security,

            Defendant.

---

        Gerald S. Weinrich, **WEINRICH LAW OFFICE**, 400 South Broadway, Suite 203, Rochester MN 55904, for Plaintiff.

        David W. Fuller, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis MN 55415, for Defendant.

## I.   INTRODUCTION

Plaintiff Steve Wayne Postier (Plaintiff) brings the present action, disputing Defendant Commissioner of Social Security's denial of his applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court, Magistrate Judge Tony N. Leung, for a report and recommendation to United States District Court Judge Patrick J. Schiltz on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636(b)(1); D. Minn. LR 72.1-2.

The decision of the Administrative Law Judge David K. Gatto, *see* Tr. 12-18, is thorough and well-reasoned. Having reviewed the record and finding no error in the Administrative Law Judge's decision, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket No. 9) be **DENIED**; the Commissioner's Motion for Summary Judgment (Docket No. 11) be **GRANTED**.

## II.   FACTS

### a. *Procedural Posture*

Plaintiff was born in 1953 and was 53-years old on March 21, 2007, when he filed his protective applications for DIB and SSI. Tr. 10, 105. Plaintiff's applications were denied. Tr. 10, 39, 41, 43, 45, 52, 58, 59, 62.  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). Tr. 65, 67.  On July 13, 2009, Plaintiff had a hearing before Administrative Law Judge David K. Gatto. Tr. 18, 72, 77.

In his partially favorable opinion, dated August 28, 2009, *see* Tr. 1, the ALJ found and concluded as follows: Plaintiff has not engaged in substantial gainful activity since December 1, 2006. Tr. 12. Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with a remote history of back surgery at L3, a history of left heel cyst (status post excision), and non-insulin dependent diabetes mellitus. Tr. 12. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments of 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr. 13. Plaintiff has the residual functional capacity (RFC) to perform light work, but is limited to only occasional climbing, stooping, and crouching. Tr. 13.

In reaching his conclusion about Plaintiff's RFC, the ALJ thoroughly reviewed the record evidence. *See* Tr. 13-16. The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible prior to October 10, 2008, because they were inconsistent with the record evidence. Tr. 14. The ALJ concluded that the opinion of the state agency consultant was consistent with the record and was, therefore, accorded substantial weight. Tr. 16. Conversely, the opinion of Plaintiff's doctor, Dr. Duane Bartels, was not accorded substantial weight because it was inconsistent with the record evidence. Tr. 16.

The ALJ further found and concluded as follows:  Plaintiff is unable to perform his past relevant work. Tr. 16. Plaintiff was considered an individual of advanced age on October 10, 2008. Tr. 16. Beginning on October 10, 2008, Plaintiff has not been able to transfer any job skills to other professions. Tr. 16.  Prior to October 10, 2008, there were a significant number of jobs in the national economy that Plaintiff could perform. Tr. 17. Beginning on October 10, 2008, there were not a significant number of jobs in the national economy that Plaintiff could perform. Tr. 17. Therefore, Plaintiff was not under a disability from December 1, 2006, through October 10, 2008, but beginning on October 10, 2008, Plaintiff was disabled and continued to be disabled. Tr. 18.

Plaintiff requested a review of the ALJ's decision. Tr. 30. The Appeals Counsel denied Plaintiff's request for review on November 5, 2010. (Tr. 1.) Thereafter, Plaintiff brought the present action, seeking an order reversing the decision of the Commissioner that Plaintiff was not disabled before October 10, 2008, and remanding to the

Commissioner for determination of benefits. *See* Pl.'s Mem. at 13, May 13, 2011. Defendant opposes the motion.

### b.  Employment Background

Plaintiff has an earning history extending back to 1969. Tr. 113. Plaintiff did not earn more than $10,000 in any year between 1988 and 2007. Tr. 113. Between 1992 and 2000, Plaintiff worked intermittently as a cook in various restaurants, as a dishwasher, and as a janitor. Tr. 136, 138-141. But, from 1976 until 2006, Plaintiff's primary employment has been as a mason. Tr. 128. In this position, Plaintiff was required to walk, stand, grasp, reach, and write, and Plaintiff was responsible for frequently carrying ten pounds. Tr. 128, 137.

### c.  Medical Records

#### i.  Records Pre-October 10, 2008

On January 26, 2006, Plaintiff saw Dr. Bartels. Tr. 212, 229. Plaintiff reported he had a "bump on [his] ankle." Tr. 212, 229. Plaintiff reported that the bump had been present for about a year and was becoming "a bit painful." Tr. 212, 229. Plaintiff was diagnosed with a cyst. Tr. 212-13, 229-30. Plaintiff reported weakness in his leg and chronic sciatica, and that he injured his knee during two falls within the last month.  Tr. 214, 227.  Dr. Bartels noted that Plaintiff moved "somewhat slowly from [his] chair up to the exam table." Tr. 214, 227. Plaintiff reported that he was purchasing OxyContin "off the street." Tr. 214, 227. Dr. Bartels "did not think [it would be] a good idea to give him "OxyContin which is what he really wanted." Tr. 214, 227. Dr. Bartels diagnosed Plaintiff with a probable internal derangement of his knee and chronic left leg sciatica.

4

Tr. 214, 227. Dr. Bartels believed that there was a link between Plaintiff's sciatica and a work injury in 1984 for which he underwent a bilateral diskectomy. Tr. 214, 227.

On February 1, 2006, Plaintiff saw Dr. Bartels. Tr. 208, 233. Plaintiff reported that he was experiencing leg pain and that his prescribed pain medication was not working well. Tr. 208, 233. Dr. Bartels noted that Plaintiff's blood sugar was extremely high and suspected that Plaintiff's leg pain may be due to diabetes. Tr. 208, 233. Plaintiff was prescribed oxycodone and OxyContin. Tr. 208, 233. On February 1, 2006, Plaintiff also saw Loring J. Stead, DPM. Tr. 210, 231. Plaintiff reported that he injured himself in 1987 during an automobile accident and had surgery in 1988. Tr. 210, 231. Dr. Stead diagnosed Plaintiff with Achilles' tendinitis and bursa, and neurapraxia. Tr. 210-11, 231. On February 1, 2006, Plaintiff also underwent diagnostic radiology examination of his left tibia and fibula, which revealed an ankle cyst. Tr. 276.

On February 9, 2006, Plaintiff saw Dr. Bartels. Tr. 206, 235. Plaintiff reported that he "continue[d] to have occasional episodes of sciatica back pain and report[ed] all the pain pills" that were prescribed to him were not alleviating his symptoms. Tr. 206, 235. Plaintiff reported that he "bought some OxyContin off the street and that seems to work best." Tr. 207, 235. Plaintiff requested OxyContin and was prescribed OxyContin to be used on an as needed basis. Tr. 207, 235. Plaintiff also saw his Dr. Stead. Tr. 237. Plaintiff reported that his left heel cyst continued to be a problem. Tr. 237. Dr. Stead diagnosed Plaintiff with Achilles bursa, neuropraxia, and sciatica. Tr. 237.

On February 15, 2006, Plaintiff met with Janice Miller, RN. Tr. 202-04, 238-40. The primary purpose of the meeting was teaching Plaintiff about his recent diagnosis of

Type 2 Diabetes. Tr. 203, 239. Plaintiff reported that his ability to exercise was "really limited" due to his sciatica. Tr. 202, 238. Plaintiff reported that "if he move[d] or he [was] on concrete or an uneven surface he [would] have increased pain." Tr. 202, 238. Plaintiff reported that if "the pain [was] controlled on pain medications he [would] walk and [try] to get around." Tr. 202, 238.

On March 8, 2006, Plaintiff met with Dr. Bartels. Tr. 199, 243. Plaintiff reported that he was taking OxyContin for occasional episodes of sciatica and back pain. Tr. 199, 243. Plaintiff reported that his pain "dramatically appear[s] and just as dramatically, after a few hours, disappear[s]." Tr. 199, 243. On March 8, 2006, Plaintiff also met with a dietician because his Type 2 Diabetes was uncontrolled. Tr. 197, 241, 244. Plaintiff reported that he was doing a "cardioglide machine" for exercise for 30 to 40 minutes per day. Tr. 197, 241, 244.

On July 26, 2006, Plaintiff saw Dr. Bartels for follow-up for his back pain and diabetes. Tr. 246. Plaintiff reported that he had mostly good days, but occasionally he had severe pain. Tr. 246. Dr. Bartels noted some "slight tenderness" in Plaintiff's back and radicular pain in Plaintiff's left leg. Tr. 247. Plaintiff was not monitoring his blood sugars, but he felt that his diabetes symptoms had improved with treatment. Tr. 247.

On July 26, 2006, Dr. Bartels wrote a letter in support of Plaintiff's Worker Compensation claim. Tr. 196. In his letter, Dr. Bartels noted that Plaintiff "had ongoing problems with low back pain and left leg pain" and Plaintiff was diagnosed with Type 2 Diabetes, which "[was] related . . . to his old work injury." Tr. 196.

On February 23, 2007, Plaintiff saw Dr. R. L. Christiana. Tr. 248.  Dr. Christiana summarized the history of Plaintiff's condition as follows: Plaintiff injured his low back in 1984 when he stumbled and fell at work. Tr. 248. Plaintiff was diagnosed with a herniated disc and subsequently had a laminectomy, after which he continued to have sciatica with pain extending down his left leg. Tr. 248.

Plaintiff reported to Dr. Christiana as follows: He worked during the summer of 2006, but he worked at his own pace "because he . . . need[ed] to stop if he had low back pain or left leg pain and rest for 5 or 10 minutes and then restart working," Tr. 248; he currently had minimal pain; and he took Motrin daily and oxycodone as needed. Tr. 248. Dr. Christiana observed that Plaintiff was guarded when moving his back. Tr. 248. Dr. Christiana diagnosed Plaintiff with low back and left leg extension pain. Tr. 249. Dr. Christiana concluded that Plaintiff "may work at the light work level, but should avoid climbing with occasional standing, walking, bending, and twisting."[1] Tr. 249.  There is a treatment note from March 8, 2007 from the Olmsted Medical Center, which states: "[c]ontinue with current restrictions as indicated on the previous report." Tr. 193-94.

---

[1] On February 23, 2007, Dr. Christiana completed a form. At the top of the form a box, labeled "Worker Compensation," is checked. Tr. 192, 195. On the form, it was noted that Plaintiff's date of injury was October 29, 1984. Tr. 192, 195. It was noted that Plaintiff's sciatica "remains a constant problem." Tr. 195.  The form listed Plaintiff's diagnoses as low back pain with left leg extension pain. Tr. 192, 195.  Dr. Christiana completed a grid entitled "Restricted Movements" which included postures and movements on the y-axis and frequency of movement (from "never" to "continuous") on the x-axis. Tr. 192, 195. The grid was filled out so that standing, walking, sitting, driving, bending, twisting, and squatting corresponded with "occasional." Tr. 192, 195. On the grid, climbing corresponded with "rare." Tr. 192, 195. Adjacent to the grid, Dr. Christiana checked a box, entitled "Light Work," which described the limitations of light work.  Tr. 192, 195. Dr. Christiana noted that Plaintiff could return to work. Tr. 192, 195.

On March 9, 2007, Plaintiff saw Dr. James E. Smith, a neurologist. Tr. 250-52.

Dr. Smith summarized Plaintiff's treatment records as follows:

> 1984 – Injured his back lifting concrete blocks. There was low back pain without leg pain. Off work intermittently over the next several years. Treated by a chiropractor with some improvement.
>
> 1987 – Involved in a motor vehicle accident with whiplash injury and increased low back pain, but without lower extremity pain.
>
> 1988 – Underwent bilateral discectomy at L3 at St. Paul United Hospital in the Twin Cities. Some benefit for back pain but persisting.
>
> Approximately 1990 – Episodes of posterior right leg, lasting days at a time but resolving. These persisted for 1-2 years then resolved.
>
> Approximately 1993 – Developed left buttock/left posterior thigh/left calf pain. This has persisted since that time.
>
> 1/21/02 – Plaintiff was referred . . . [for a] neurologic consultation for these symptoms. Neurologic examination showed absent Achilles tendon reflexes with slightly asymmetric quadriceps reflexes (diminished on the left). MRI of lumbosacral spine from 1/25/02 showed questionable tiny disc protrusion at L3 which did not lateralize. . . . Diagnosis was chronic musculoskeletal low back pain with possible lateral recess syndrome, although unlikely.

Tr. 250.

At his appointment with Dr. Smith, Plaintiff reported as follows: His symptoms were "'unchanged since 1984.'" Tr. 250. He had constant pain in his low back radiating down his left leg. Tr. 250. He had been experiencing "maximum pain for approximately 2 years." Tr. 250. His pain worsened after standing for 2 to 3 minutes, and "may

decrease slightly with walking." Tr. 250. Sitting and lying down for long periods of time caused him pain. Tr. 250. He had been "replacing/repairing masonry . . . which is lighter duty; however, he notes that he has difficulty doing this." Tr. 251.  Dr. Smith observed that "[t]here is embellishment and dramatic presentation of symptoms but much reduced when distracted." Tr. 251. Dr. Smith diagnosed Plaintiff with chronic low back and left leg pain, but Dr. Smith doubted that there was a neurologic lesion. Tr. 252.

On March 14, 2007, Plaintiff saw Dr. Christiana. Tr. 253. Plaintiff reported that he was currently self-employed as a mason. Tr. 253. Dr. Christiana noted that Plaintiff moved somewhat guarding his back. Tr. 253. Dr. Christiana's "[e]xamination was difficult because [Plaintiff] did not want to go through the range of motion for fear that it would aggravate his low back pain." Tr. 253. Dr. Christiana diagnosed Plaintiff with chronic low back and left leg pain.[2] Tr. 253.

On March 23, 2007, Dr. Smith reported to Plaintiff that his MRI of the lumbosacral spine from March 19, 2007, showed no evidence of left lumbosacral root compression. Tr. 255; *see* Tr. 390. Dr. Smith noted that the degenerative disc disease had developed a small to moderate sized paracentral disc protrusion, but the disc protrusion was "quite small." Tr. 255; *see* Tr. 390. Dr. Smith suspected that Plaintiff may have a left hip abnormality, but there was no evidence of a neurological cause for Plaintiff's symptoms. Tr. 255.

---

[2] On March 14, 2007, Dr. Christiana completed a form on Plaintiff's behalf. Tr. 190-91. At the top of the form a box, entitled "Worker Compensation," is checked. Tr. 190-91. It was noted that Plaintiff's "sciatic problems continue." Tr. 190-91. Dr. Christiana diagnosed Plaintiff with chronic low back and left leg pain. Tr. 190-91. The form was substantially similar to the earlier form. *See supra* n. 1.

On March 27, 2007, Plaintiff saw Toni Lais, LPT for an initial evaluation for physical therapy. Tr. 256. Plaintiff reported that he had done "no physical work since November 2006." Tr. 256. Plaintiff reported as follows: His back was out and he needed a cane to ambulate; his leg pain was between five and nine on a ten-point scale, and his back pain was from three to eight on a ten-point scale; standing and walking about half of one block generally increased his pain; sitting decreased his symptoms; and his symptoms are bad in the morning and evenings, and are less during the middle of the day; and he no longer exercised regularly, but "walking for short periods of time . . . decrease[d] his symptoms." Tr. 256. Ms. Lais noted that Plaintiff could not describe in "any detail what activities or what positions [would] make his back go out." Tr. 256.

On March 16, 2007, Plaintiff underwent a diagnostic radiology examination of his lumbar spine. Tr. 276. Reviewing the results of the examination, Ms. Lais noted that there was partial lumbarization of S1; "lumbar degenerative disc disease which [was] stable"; underlying congenital canal narrowing from L2 caudally; partial bilateral laminectomies; degenerative disc disease at L3-4, which was worsening with the development of "a small, moderate-sized, central right paracentral disc protrusion flattening the adjacent back"; and degenerative disc disease and mild to moderate facet arthropathy at L5-1. Tr. 256-57, 279.

Ms. Lais observed that Plaintiff moved with "significant pain behavior," but "[s]ome of his movement transitions [were] awkward and somewhat unnatural with again exaggerated pain response." Tr. 257. Ms. Lais further observed that Plaintiff "self limit[ed]" when asked to complete range of motion activities. Tr. 257.

On March 30, 2007, Plaintiff saw Dr. James E. Smith for left posterior hip pain. Tr. 260. Plaintiff reported a pain in his left buttocks that radiated down his leg that had been coming-and-going for the last 10 to 15 years. Tr. 260. Plaintiff reported that he had been getting weaker in his left leg. Tr. 260. Dr. Smith concluded Plaintiff's hip pain was secondary to his sciatica and Plaintiff's lumbar spine was "not likely the source of sciatica." Tr. 260. On March 30, 2007, Plaintiff also underwent a diagnostic radiology examination. Tr. 280, 384. The examination revealed that Plaintiff had mild joint space loss in his hips. Tr. 280-81, 384.

On April 4, 2007, Plaintiff saw Ms. Lais. Tr. 262. Plaintiff was observed walking with a cane, with an antalgic gait, but Plaintiff had "mild to moderate pain behavior." Tr.262. On April 4, 2007, Plaintiff also saw Dr. Bartels. Tr. 263. Plaintiff reported that he was having more trouble with his sciatica. Tr. 263. Plaintiff reported that he could not afford to test his blood sugar. Tr. 263.

On April 12, 2007, Plaintiff saw Ms. Lais. Tr. 265. Plaintiff reported increased pain and that he had stopped using his TENS unit and taking Gabapentin. Tr. 265. Plaintiff also reported that he turned down a job offer due to his physical limitations. Tr. 265. Ms. Lais observed that Plaintiff had a "severe antalgic gait pattern using cane in the right upper extremity with exaggerated pain behaviors at times, reacting very quickly and with much jerking-like reaction when [she] touche[d] his leg or move[d] his extremity that [was] out of proportion to the movement pattern." Tr. 265. Ms. Lais conclude that while Plaintiff has chronic pain, he also had "poor coping strategies and evidence of chronic pain behavior." Tr. 265.

On April 19, 2007, Plaintiff saw Ms. Lais. Tr. 266. Plaintiff reported that he was performing his physical therapy exercises and using an elliptical trainer. Tr. 266. Ms. Lais noted that Plaintiff ambulated with an antalgic gait pattern, continued to demonstrate pain behavior. Tr. 266. On April 30, 2007, Plaintiff saw Ms. Lais. Tr. 267.  Plaintiff reported that he felt improved and that his gait was less antalgic.  Tr. 267.  Plaintiff also reported that the last treatment session was "very effective at reducing pain and increasing his overall function." Tr. 267.

On May 2, 2007, Plaintiff saw Dr. Robert T. Jones. Tr. 268, 304. Plaintiff reported that his sciatica symptoms were becoming more severe. Tr. 268, 304. Plaintiff reported that Neurontin and the TENS unit made his pain worse, but physical therapy was "somewhat helpful." Tr. 268, 304. Dr. Jones diagnosed Plaintiff with left sciatica symptoms and a left Achilles tendon cyst. Tr. 268, 304.

On May 8, 2007, Plaintiff saw Ms. Lais. Tr. 269, 305. Plaintiff reported that his leg was feeling looser and he felt he was able to walk with a better gait. Tr. 269, 305. Plaintiff was *strongly* encouraged to join the YMCA. Tr. 269, 305. On May 10, 2007, Plaintiff saw Ms. Lais. Tr. 270, 306. Plaintiff reported "extensively about how the chronic pain ha[d] impacted his life and ha[d] made his life difficult, and he require[d] regular narcotic ingestion in order to manage the pain." Tr. 270, 306. Ms. Lais noted that Plaintiff held his left lower extremity very tight, but, she would "not consider any additional therapy treatments until patient ha[d] consistently demonstrated a commitment to his own recovery which would involve regular attendance of aquatic walking at the

YMCA." Tr. 270, 306. On May 16, 2007, Plaintiff was discharged from physical therapy by Ms. Lais because it yielded no long term overall changes in his symptoms. Tr. 275.

On May 10, 2007, Plaintiff saw Dr. Christiana. Tr. 272. Dr. Christiana noted that the examination was difficult because Plaintiff was rigid and complained of pain in all positions. Tr. 272. Dr. Christiana referred Plaintiff for an electromyography (EMG) exam, and completed a medical report for Plaintiff's employer, stating that "we are having continuing neurological work up and that the patient is totally incapacitated at this time." Tr. 273. Plaintiff underwent an EMG in May, which was "normal" and there was no evidence of lumbosacral radiculopathy. Tr. 391.

On June 14, 2007, Plaintiff was seen by Dr. Stead for a pre-operative evaluation. Tr. 310; Tr. 340-41. Plaintiff reported that his heel pain was four on a ten-point scale. Tr. 310; Tr. 340-41. It was noted that Plaintiff had a swollen area along the left tendon Achilles region. Tr. 310; Tr. 340-41. On June 29, 2007, Plaintiff had his cyst surgically excised. Tr. 317, 346. Plaintiff did well after his surgery. Tr. 318, 321, 350.

On June 26, 2007, Plaintiff saw Dr. Bartels. Tr. 313; Tr. 342-43. It was noted that Plaintiff was currently not working due to his back pain. Tr. 313; Tr. 342-43. It was noted that Plaintiff was currently taking Metformin for his diabetes, OxyContin for his back, and Oxycodone for breakthrough back pain. Tr. 313; Tr. 342-43. Plaintiff reported that he was unsatisfied with Dr. Christiana's policy not to treat patients with narcotic therapy. Tr. 313; Tr. 342-43. Plaintiff stated that he was going to transfer to another clinic. Tr. 313; Tr. 342-43. Dr. Bartels told Plaintiff that after this appointment he would not be extending Plaintiff's prescriptions any more. Tr. 316; Tr. 345.

On July 3, 2007, Plaintiff saw Josh Holmes, LPT. Tr. 319, 348. Plaintiff reported that over the previous five months his pain had increased. Tr. 319, 348. Plaintiff also reported that his pain increased when he bends over and sits for a prolonged period of time, but standing, walking, and changing positions reduced his pain. Tr. 319, 348. Plaintiff reported that the pain in his back is typically five on a ten-point scale, but sometimes it is as high as nine on a ten-point scale. Tr. 319, 348. Plaintiff also reported that his pain awakened him three to four times per night. Tr. 319, 348.  Plaintiff also reported the pain in his leg fluctuated between seven and nine on a ten-point scale. Tr. 319, 348. Mr. Holmes observed that Plaintiff has a kyphotic posture when sitting, a "fair standing posture," and a 75 percent flexion loss and a 50 percent extension loss in his trunk. Tr. 319, 348.

On July 30, 2007, Plaintiff saw Ms. Lais. Tr. 322, 351. Plaintiff reported that his "left lower extremity pain" was "severe." Tr. 322, 351. Plaintiff reported that his pain was worsened by weight bearing, standing, and walking. Tr. 322, 351.

On August 7, 2007, Plaintiff saw Ms. Lais. Tr. 323, 352. Plaintiff was not using a cane and claimed that he could ambulate without one for short distances. Tr. 323, 352. Plaintiff reported that he had moved in with a friend because of "decreased financial stability and loss of his trailer home."  Tr. 323, 352.  Plaintiff reported that his pain was five on a ten-point scale.  Tr. 323, 352.  Plaintiff saw Ms. Lais on August 23, 2007. Tr. 324, 353. It was noted that Plaintiff has had no overall change. Tr. 324, 353.

On August 24, 2007, Plaintiff saw Dr. Jones. Tr. 325, 354. Plaintiff reported severe pain and disability, and that he continued to trip and fall. Tr. 325, 354. Dr. Jones

14

noted that his examination observations correlated with sciatica-type symptom, but "it seem[ed] somewhat inconsistent at times, specifically with the sitting straight leg sometimes not always being positive versus supine straight leg being positive." Tr. 325, 354. Dr. Jones concluded that Plaintiff has no gross neurovascular deficits, and Plaintiff likely had sciatica-type discomfort or musculoligamentous low-type back pain. Tr. 325, 354.

On August 30, 2007, Plaintiff saw Dr. Bartels. Tr. 326, 355. Dr. Bartels concluded that Plaintiff's diabetes was controlled, and Plaintiff continued to have chronic back and left leg pain. Tr. 326, 355. Dr. Bartels prescribed Plaintiff OxyContin and Oxycodone. Tr. 326, 355.

On September 5, 2007, Plaintiff saw Ms. Lais. Tr. 328, 357. Plaintiff reported that he had been working some jobs and completed three hours of a masonry job that morning. Tr. 328, 357. Ms. Lais concluded that Plaintiff's part time work "should be a good distraction for his chronic pain problems" and he continued to have excellent blood sugar control. Tr. 328, 357. On January 30, 2008, Plaintiff met with Ms. Lais again. Tr. 360. Plaintiff reported that he had not used a cane in "quite some time" and "the last 4 months ha[d] not been bad." Tr. 360. Plaintiff saw Ms. Lais again on February 5, 2008. Tr. 362. It was noted that Plaintiff was off work as a "stone worker." Tr. 362. On February 20, 2008, Plaintiff saw Ms. Lais again. Tr. 363. Plaintiff reported a large increase in pain, but it was noted that Plaintiff continued to ambulate with "a slight antalgic gait pattern without pain." Tr. 363. On February 27, 2008, Plaintiff saw Ms. Lais and reported that physical therapy was keeping him away from total disability. Tr. 365.

15

Ms. Lais concluded that Plaintiff had "low self efficacy with coping skills" and "[c]ontinue[d] on daily narcotic for chronic pain management." Tr. 365.

On April 1, 2008, Plaintiff saw Dr. Bartels. Tr. 366. Plaintiff reported that he could not walk outside in cold weather, and he was "a bit unsteady with his feet" due to his chronic back and sciatica pain. Tr. 366. Nevertheless, Plaintiff also reported that his pain was "pretty well" managed on his current medication regimen. Tr. 366-67. Dr. Bartel diagnosed Plaintiff with Type 2 Diabetes, which was controlled, polyuria, and chronic back and left leg pain. Tr. 366.

On April 7, 2008, Plaintiff saw Ms. Lais. Tr. 368. Plaintiff reported "continued improvement with ambulation without a cane." Tr. 368. Plaintiff also reported that he continued to struggle with prolonged standing and sciatic-type pain. Tr. 368. Ms. Lais noted that Plaintiff demonstrated some right and left backward sacral torsion with some musculoskeletal dysfunction. Tr. 368. On April 9, 2008, Plaintiff saw Ms. Lais. Tr. 369. Plaintiff reported that he had found it more difficult to deal with his chronic pain. Tr. 369. Ms. Lais observed that Plaintiff ambulated without a cane. Tr. 369. Ms. Lais concluded that Plaintiff had chronic pain with poor coping skills. Tr. 369. On April 18, 2008, Plaintiff saw Ms. Lais. Tr. 370. Plaintiff reported that he went to the casino and spent the evening standing without the aid of his can, which aggravated his lower extremity pain. Tr. 370. Plaintiff also reported that he had not worked in seven months. Tr. 370. Ms. Lais concluded that Plaintiff had chronic pain with decreased coping skills. Tr. 370.

On April 24, 2008, Plaintiff saw Ms. Lais. Tr. 371. Plaintiff reported no overall improvement in his left lower extremity pain. Tr. 371. Ms. Lais told Plaintiff that

physical therapy cannot be a maintenance type therapy and he needed to improve over the next several sessions. Tr. 371.

On May 5, 2008, Plaintiff saw Ms. Lais. Tr. 372. Plaintiff reported an absence of sharp pain in his left lower extremity. Tr. 372.  Plaintiff reported an incident where he had a difficult time walking two to three blocks with his dog because his left knee kept giving way. Tr. 372. Ms. Lais observed that Plaintiff ambulated independently into the department and was found standing in the waiting room. Tr. 372. Ms. Lais noted that Plaintiff had increased tension throughout his left lower extremity. Tr. 372.

On May 12, 2008, Plaintiff saw Ms. Lais. Tr. 373. Plaintiff reported that he had not been able to ambulate due to pain. Tr. 373. Ms. Lais diagnosed Plaintiff with chronic low back pain with decreased coping skills. Tr. 373.

On May 15, 2008, Plaintiff saw Ms. Lais. Tr. 373. Plaintiff reported no change overall and that his pain symptoms waxed and waned. Tr. 374. Ms. Lais observed that Plaintiff had myofascial restrictions, muscle tightness, and guarding behavior. Tr. 374. Plaintiff was diagnosed with chronic pain. Tr. 374. Ms. Lais concluded that it was time to wean Plaintiff off of physical therapy. Tr. 374.

On May 29, 2008, Plaintiff saw Dr. Bartels. Tr. 375. Plaintiff reported that he had a pretty bad week and used up his medications. Tr. 375. Dr. Bartels noted that Plaintiff "actually had a fairly good supply in his monthly allotment and used them all last week." Tr. 375. Plaintiff reported that his left leg pain was dramatically better. Tr. 375. Dr. Bartels refilled Plaintiff's medications. Tr. 375.

On July 28, 2008, Ms. Lais completed a discharge summary for Plaintiff. Tr. 378. Plaintiff was discharged from physical therapy because he was not improving. Tr. 378. Plaintiff was referred to massage therapists in the area. Tr. 378.

ii.   <u>Records beginning October 10, 2008</u>

On October 23, 2008, Plaintiff saw Dr. Bartels. Tr. 379. Plaintiff reported that he had a little bit of tingling in his feet and issues with his chronic back pain and sciatica. Tr. 379. Dr. Bartels diagnosed Plaintiff with Type 2 Diabetes, which was controlled. Tr. 379. Dr. Bartels noted that he would like Plaintiff to lose some weight, but noted that it was difficult for Plaintiff to do much walking "with his bad leg and back pain." Tr. 379.

On May 8, 2009, Plaintiff saw Dr. Bartels. Tr. 382. Plaintiff reported that he had a bout of sciatica problems during the last month and had to take more of his breakthrough medication. Tr. 382. Dr. Bartels examined Plaintiff and noted that he was tender "generally in the low back" and his left leg had radicular pain. Tr. 382. Based upon Plaintiff's self-report, Dr. Bartels noted that Plaintiff brought in a form related to his application for benefits; Plaintiff's back was very uncomfortable no matter what Plaintiff did; Plaintiff could not sit in one position for more than a few minutes; Plaintiff felt best lying down; and if Plaintiff walked, within one or two blocks he would have significant increased back pain and increased pain radiating into his leg. Tr. 382. Dr. Bartels diagnosed Plaintiff with Type 2 Diabetes, which was controlled, and chronic back pain with left leg sciatica. Tr. 382.

Dr. Bartels completed a "Medical Opinion RE: Ability to Do Work-Related Activities" form. Tr. 386. Dr. Bartels concluded that Plaintiff cannot lift more than 10

pounds occasionally; Plaintiff cannot stand more than two hours in an eight-hour work day; Plaintiff must change position every five to ten minutes due the his pain; Plaintiff would need to lie down multiple time each day, "possibly once every hour." Tr. 387. Dr. Bartels further concluded that Plaintiff can never reach, push, pull, twist, stoop, crouch, climb stairs, or climb ladders. Tr. 387. Dr. Bartels further concluded that Plaintiff would miss more than three days of work per month due to pain. Tr. 389. Dr. Bartels noted that these conclusions were supported by Plaintiff's straight-leg-raise test, which indicated neuropathic pain in Plaintiff's leg. Tr. 387.

### d. Record from Plaintiff's Application for DIB

#### i. Disability Report

On May 2, 2007, Plaintiff completed a Disability Report. Tr. 126. Plaintiff reported as follows: His illness, injuries, and conditions include sciatica, diabetes, neuropathy, bone spurs, and carpal tunnel. Tr. 127. He cannot stand, sit, walk, or bend. Tr. 127. He had difficulty dressing himself. Tr. 127. He was self employed after his alleged onset date, December 1, 2006, and accommodated his condition by setting his own hours and schedule. Tr. 127. He ended his self-employment when he could no long handle the physical demands of tuckpoint masonry. Tr. 127. He also stated that he completed four or more years of college and completed vocational training through the bricklayer's union. Tr. 131.

On August 23, 2007, Plaintiff completed a second disability report. Tr. 147. Plaintiff reported as follows: His sciatica "lessened" in June 2007, but he could not fully use his leg. Tr. 148. He self-diagnosed himself with emphysema due to shortness of

breath. Tr. 148. He was unable to maintain work as a tuckpoint mason for more than a "few hours at a time" and more than two days per week because the work was "too physically taxing." Tr. 150. He was "not to do certain, non-intensive exercise, such as stretches." Tr. 150.

On October 15, 2007, Plaintiff completed a third disability report. Tr. 156. Plaintiff reported no changes from his previous disability report. Tr. 156-58. Plaintiff reiterated that was "unable to work more than limited part time." Tr. 159.

ii.  <u>Physical Residual Functional Capacity Assessment</u>

On August 6, 2007, Dr. Howard Atkin conducted a physical RFC assessment. Tr. 282-92. Dr. Atkin concluded that Plaintiff can occasionally lift 20 pounds, can frequently lift 10 pounds, can stand six hours in an eight hour day, can sit six hours in an eight-hour day, and is limited in his lower extremities for pushing and pulling. Tr. 283. Dr. Atkins also concluded that Plaintiff's diabetes was well controlled. Tr. 283. Dr. Atkins concluded that while Plaintiff has intermittent sciatica, the medical records do not indicate the frequency or severity of his discomfort. Tr. 283. Dr. Atkins also concluded that Plaintiff's only postural limitations were that he could only occasionally climb, stoop, or crouch. Tr. 284. On September 25, 2007, Dr. Eames Sandra affirmed the assessment of Dr. Atkins as written. Tr. 321-333.

iii.  <u>Administrative Hearing</u>

On July 13, 2009, Plaintiff appeared for an administrative hearing before Administrative Law Judge Goto. Tr. 19-29. Mitchell Norman testified as the vocational expert at the hearing. Tr. 88 (professional qualifications).

Plaintiff testified at the hearing as follows: Between 2007 and 2009, Plaintiff did some masonry work, where he sprayed sealant on brink veneers. Tr. 22. He did this work two or three days per month, and a couple of times he earned more than $800.00 per month. Tr. 23. He estimated that he earned $2,800 in 2008, and $4,600 in 2007. Tr. 23. He lives with a friend who helped him cook, and pay for advertising and insurance for his self-employed masonry work. Tr. 24. He gets sore sitting, standing, and laying. Tr. 25. He can drive half of an hour before his sciatica and back pain acts up. Tr. 25. He was currently taking Metformin for his diabetes and OxyContin for his leg, back, elbows, and wrists. Tr. 25-26.

Thereafter, the ALJ presented Mr. Norman with two hypotheticals. The first hypothetical man was between the age of 53 and 55, and had sciatica post discectomy, degenerative disc disease in the lumbar spine, diabetes mellitus, and left Achilles tendonitis. Tr. 26. The hypothetical man's conditions limited him to light work, with occasional climbing and stooping. Tr. 26. The hypothetical man would have the ability to stand and walk up to six hour out of an eight hour day. Tr. 26. Mr. Norman concluded that such an individual could not perform Plaintiff's past work, but such an individual could perform work in the regional economy. Tr26.

The second hypothetical man was similar to the first, except that he could not lift more than ten pounds frequently or occasionally; he could not stand or walk more than two hours out of an eight hour day; and he would need a sit or stand option every five minutes. Tr. 27. Mr. Norman testified that such a hypothetical individual could not perform any competitive employment. Tr. 27.

## III.   ANALYSIS

Plaintiff brings the present motion, arguing that the ALJ's RFC assessment is not based upon substantial evidence on the record as a whole because the ALJ erred in weighing the opinion of Dr. Bartels and erred in his assessment of Plaintiff's credibility. For the reasons set forth below, this Court concludes that the ALJ's thorough and well-reasoned decision is just that—thorough and well-reasoned. This Court concludes that the RFC assessment is supported by substantial evidence in the record as whole.

### a.  *Standard of Review*

Review by this Court is limited to a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole and not affected by error of law.  42 U.S.C. §§ 405(g), 1383(c)(3); *Murphy v. Sullivan*, 953 F.2d 383, 384 (8th Cir. 1992); .  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quotation omitted).  "The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings."  *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987).  "Substantial evidence on the record as a whole, . . . requires a more scrutinizing analysis."  *Id.* (quotation omitted).

The Court should not reverse the Commissioner's finding merely because evidence may exist to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994); *see also Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (stating that the ALJ's determination must be affirmed even if substantial evidence would support

the opposite finding).  Instead, the Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."  *Gavin*, 811 F.2d at 1199. In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir.1993).  If it is possible to reach two inconsistent positions from the evidence, then the court must affirm that decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir.1992).

To be entitled to DIB and SSI, a claimant must be disabled. 42 U.S.C. §§ 423(a)(E), 1382(a)(1).  A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505, 416.905. The Social Security Administration adopted a five-step procedure for determining whether a claimant is "disabled" within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The five steps are: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the claimant can return to his or her past relevant work; and (5) whether the claimant can adjust to other work in the national economy. 20 C.F.R. §§ 404.1520(a)(5)(i)-(v); 416.920(a)(4)(i)-(v). The claimant has the burden of proof to show he or she is disabled through step four; at step five, the burden shifts to the Commissioner. *Snead v. Barnhart*, 360 F.3d 834, 836 (8th Cir. 2004); *see*

*also* 20 C.F.R. §§ 404.1512(a), 416.912(a); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

### b. Residual Functional Capacity

#### i. Dr. Bartels's Opinion

In his decision, the ALJ thoroughly reviewed the record evidence, and concluded that Plaintiff had the RFC to perform light work, with some limitations. The ALJ acknowledged Dr. Bartels's May 2008 opinion of Plaintiff's functional limitations, but concluded that these limitations were (1) based upon Plaintiff's own subjective reports; (2) not supported by objective medical findings, including the "minimal" findings of Dr. Bartels; and (3) inconsistent with Plaintiff's reported masonry work. Tr. 16. In contrast, the ALJ noted that the opinion of the State Agency consultant was consistent with the objective medical findings, the minimal course of treatment, and Plaintiff's work history. Tr. 16.

Plaintiff argues that the ALJ erred in weighing Dr. Bartels's opinion as to the extent of Plaintiff's functional restrictions. Pl.'s Mem. at 10. Plaintiff contends that Dr. Bartels's May 2009 opinion concerning Plaintiff's functional restrictions should be accorded substantial weight because the limitations were consistent with Plaintiff's reported symptoms. *Id.* at 12. Plaintiff further argues that the ALJ erred in not according Dr. Bartels's opinion substantial weight because the ALJ did not offer any specific explanation for rejecting Dr. Bartels's opinion and there was no medical expert testimony at the hearing. *Id.* For the reasons set forth below, this Court concludes that the ALJ did

not err in his weighing of the medical opinions and the ALJ's ascribed weight to the medical opinions is supported by substantial evidence in the record as a whole.

In steps four and five, the ALJ assesses an individual's RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv)-(v), 416.920(a)(4)(iv)-(v). RFC is defined as the most a claimant can do despite the limitations of the individual's impairments. *Id.* at §§ 404.1545(a)(1), 416.945(a)(1). In assessing RFC, the ALJ considers "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence. The ALJ, however, still bears the primary responsibility for assessing a [Plaintiff's RFC] based on all relevant evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) (citations and quotation omitted.)

Medical evidence includes "medical opinions." 20 C.F.R. §§ 404.1527(b), 416.927(b). An ALJ must consider medical opinions from treating and nontreating sources, *id.* at §§ 404.1527(d), 416.927(d), and an "ALJ must resolve conflicts among the various opinions." *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. By contrast, the opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Jenkins v. Apfel*, 196 F.3d 922, 924-25 (8th Cir. 1999) (quotations omitted.) Nevertheless, "[w]hile the opinion of a treating physician is entitled to substantial weight, it is not conclusive because the record must be evaluated as a whole. Moreover, a treating physician's opinion is afforded less deference when the medical evidence in the record as a whole

contradicts the opinion." *Howe v. Astrue*, 499 F.3d 835, 839 (8th Cir. 2007) (citation and quotation omitted); *see* 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6) (stating that the ALJ must consider "any factors . . . which tend to support or contradict the [treating physician's] opinion."); *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009) (stating that "an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence").

"When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (quotation omitted). For example, "[a]n ALJ may justifiably discount a treating physician's opinion when that opinion is inconsistent with the physician's clinical treatment notes." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quotation omitted). Likewise, "conclusory opinions not backed by medically acceptable clinical and laboratory diagnostic data carry limited weight in the disability analysis." *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007).

In the present case, the ALJ did not err in weighing the opinion of Dr. Bartels.[3] First, as the ALJ noted, Dr. Bartels's examinations do not support Dr. Bartels's own opinion that Plaintiff is completely disabled. As the ALJ noted, notwithstanding Plaintiff's extensive treatment history with Dr. Bartels, Dr. Bartels's opinion was based largely upon Plaintiff's subjective complaints, not examinations or objective medical evidence. *See, e.g.*, Tr. 199, 206, 208, 233, 235, 243, 313-14, 326, 342-43, 355, 366-67,

---

[3] This Court has focused its review of the record on Plaintiff's back pain and left leg sciatica because there is no dispute that Plaintiff's diabetes mellitus was controlled and Plaintiff did not have any problems with his ankle after his cyst was excised.

375, 379.  As will be discussed below, the ALJ concluded that Plaintiff's subjective complaints were not credible.  Moreover, Dr. Bartels's few observations and objective findings support the ALJ's RFC rather than complete disability. *See, e.g.,* Tr. 246, 247, 382.

Second, as the ALJ noted, Dr. Bartels's opinion is inconsistent with the objective medical evidence, which does not support "disabling pain or disabling limitations." Tr. 15. For example, after reviewing Plaintiff's MRI, Dr. Smith found that Plaintiff's degenerative disc disease had caused a disc protrusion that was "quite small" and Dr. Smith found no neurological basis for Plaintiff's pain. Tr. 235, 255, 390. After numerous physical therapy sessions, Ms. Lais opined repeatedly that Plaintiff's subjective symptoms were the result of poor coping skills, Tr. 265, 365, 369, 370, 373, and also concluded that part-time employment would be good for Plaintiff. Tr. 328, 357. After his examination of Plaintiff, Dr. Jones noted no gross neurovascular deficits. Tr. 325, 354. After multiple examinations, Dr. Christiana concluded that Plaintiff could do light work. Tr. 190-95, 248-49.  In the instance when Dr. Christiana noted that Plaintiff should not work pending an EMG, the EMG was, subsequently, normal. Tr. 273, 391. Thus, the ALJ did not err in weighing Dr. Bartels opinion less where it was inconsistent with the medical evidence as a whole. *Martise*, 641 F.3d at 925.

The ALJ did not err in granting substantial weight to the state consultant where it was consistent with the objective medical evidence, especially Dr. Christiana's opinion concerning Plaintiff's ability to perform light work, and it was also consistent with Plaintiff own statements about his daily activities.  Moreover, the ALJ did not err in

failing to obtain a medical expert to testify at the hearing. The ALJ does not need to further develop the record where "additional information would . . . add[] nothing to the ALJ's deliberative process." *Halverson v. Astrue*, 600 F.3d 922, 934 (8th Cir. 2010).

### ii. Plaintiff's Credibility

This Court "defer[s] to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue,* 547 F.3d 933, 935 (8th Cir. 2008) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984)). The ALJ need not explicitly discuss each factor. *Goff v. Barnhart,* 421 F.3d 785, 791 (8th Cir. 2005). "The inconsistencies between [a claimant's] allegations and the record evidence provide sufficient support for [an] ALJ's decision to discredit [a claimant's] complaints of pain." *Guilliams*, 393 F.3d at 803.

In addition to being inconsistent with the objective medical evidence cited above—which alone is sufficient basis for discrediting Plaintiff's subjective complaints—the ALJ found Plaintiff's statements not to be credible because Plaintiff's subjective complaints were inconsistent with Plaintiff's description of his activities; Plaintiff's subjective complaints were not credible because Plaintiff embellished or

dramatically presented his symptoms to his treatment providers, his subjective complaints are inconsistent with his treatment history; and Plaintiff's work history did not support that Plaintiff's credibility. Tr. 15. For the reasons set forth below, this Court concludes that the ALJ did not err in weighing Plaintiff's credibility and the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

First, as the ALJ noted, Plaintiff's own statements about his activities were inconsistent with Plaintiff's allegations of complete disability. Tr. 16; *see, e.g.* Tr. 22, 25, 127, 150, 159, 197, 241, 244, 248, 250, 251, 256 266, 328, 357. In particular, Plaintiff reported working part-time and operating his own independent contractor business throughout the time relevant period. *See* Tr. 24, 127, 150, 251, 253, 328, 357.

Second, the ALJ noted that Plaintiff's subjective complaints were inconsistent with Plaintiff's treatment history. Tr. 15. Specially, the ALJ noted that Plaintiff's treatment providers thought Plaintiff was embellishing and dramatically presenting his symptoms. Tr. 14; *see* Tr. 255-57, 265, 325, 354, 365, 369, 370, 373. This conclusion is supported by substantial evidence in the record as a whole and is a reasonable basis to discount Plaintiff's credibility. *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) (holding that an ALJ is entitled to draw credibility conclusions based on physicians observations that claimant is exaggerating symptoms).

Third, the ALJ concluded that Plaintiff's subjective complaints were inconsistent with Plaintiff's course of treatment. Specifically, ALJ noted that Plaintiff was uncooperative during medical examinations. *See* Tr. 14; *see also* Tr. 253, 257, 272. The ALJ also noted that Plaintiff did not follow through on his recommended treatments. *See*

Tr. 14; *see also* 265, 270, 306. The ALJ further noted that Plaintiff's treatment records support that Plaintiff primarily sought treatment for obtaining opioid medication and even went so far as to purchase the medications off the street and threaten not to see a treatment provider because he would not prescribe the Plaintiff opioid medication. *See* Tr. 14; *see also* Tr. 207, 214, 227, 235, 342-43, 375. These conclusions are supported by substantial evidence in the record as a whole and are each a reasonable basis to discount Plaintiff's credibility. *See Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (holding that failure to follow recommended treatments is valid basis for discrediting subjective complaints); *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005) (holding that possible overuse of narcotic medications was a basis for discrediting subjective complaints).

Finally, the ALJ concluded that Plaintiff's subjective complaints were inconsistent with Plaintiff's employment. Tr. 15. The ALJ noted that Plaintiff did not look for employment in any industry other than masonry, and Plaintiff did not seek vocational services. Tr. 15. The ALJ also noted that Plaintiff had a poor work and earnings history. Tr. 15; *see also* Tr. 128, 136, 141, 265. Therefore, the ALJ concluded that Plaintiff's subjective complaints were inconsistent with an individual motivated to work. Tr. 15. These conclusions are supported by substantial evidence in the record as a whole and are a reasonable basis to discount Plaintiff's credibility. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir.2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability." (citation omitted)).

iii.  <u>RFC to Perform Light Work</u>

The ALJ concluded that Plaintiff had the RFC to perform light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), but he was limited to only occasional climbing, stooping, and crouching.  Tr.  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).  As stated above, this opinion is supported by the opinions of the state agency consultant, which was granted substantial weight because it was consistent with the objective medical findings—especially the opinion of Dr. Christiana—as well as Plaintiff's own description of his daily activities. Thus, this Court concludes that the ALJ's RFC assessment is supported by substantial evidence in the record as a whole.

## IV.   RECOMMENDATION

Based upon the record and memoranda, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Summary Judgment (Docket No. 9) be **DENIED**;

2.    Commissioner's Motion for Summary Judgment (Docket No. 11) be **GRANTED**; and

3.    The Clerk of Court be directed to enter judgment accordingly.


Dated:  January 30, 2012                          *s/ Tony N. Leung*

                                                  Tony N. Leung
                                                  United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.   This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.   Written objections must be filed with the Court before **February 14, 2012** .